**Michael C. ANTONELLI, Plaintiff,**

v.

**Thomas BURNHAM, etc., et al., Defendants.**

**No. 83 C 4599.**

United States District Court, N.D. Illinois, E.D.

Feb. 22, 1984.

Michael Antonelli, pro se.

No appearance for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Michael C. Antonelli ("Antonelli"), an Illinois resident now in the custody of the United States Bureau of Prisons, brings this 42 U.S.C. § 1983 ("Section 1983") pro se Complaint for damages and the expunction of certain state records. Antonelli alleges a conspiracy to violate his constitutional rights under the Fourteenth Amendment.[1] Jurisdiction exists under 28 U.S.C. § 1343(3).[2]

Antonelli has requested leave to file his Complaint without prepayment of the filing fees. For the reasons stated in this memorandum opinion and order, Antonelli's motion is denied without prejudice to his filing an amended complaint limited to the single non-frivolous claim identified in this opinion.

### Facts [3]

In April 1978 Antonelli opened a checking account at the Interstate Bank of Oak Forest, Illinois ("Bank") with a $100 deposit. Shortly thereafter Bank closed the account and sent Antonelli a $100 draft. In the meantime Antonelli had written several checks on the account, including one to Brementowne Drugs, Inc. ("Brementowne") for a $28.62 purchase. Because Bank had closed Antonelli's account, the check bounced.

In July 1978 Thomas Burnham ("Burnham"), head of the Special Prosecutions Unit of the Cook County State's Attorney's Office, communicated with Brementowne's owner John Royhl ("Royhl") and had him sign a complaint charging Antonelli with deceptive practice. Summons issued directing Antonelli to appear in court July 5.

On July 4 Antonelli entered a hospital for surgery on his right hand. Although he informed his attorney he could not appear in court on the date designated in the summons, his attorney failed to appear and advise the court of Antonelli's situation. When Antonelli failed to appear the court issued a warrant for his arrest and set bond at $100. Thomas Kelly ("Kelly") of the Tinley Park Police Department arrested Antonelli on the warrant, and a new court date was set for October 4.

Antonelli turned all the court papers over to his attorney, who told Antonelli he

1. Though Antonelli also cites the Fifth Amendment (technically inapplicable in any case where state action is the predicate for suit), his claims assert provisions (such as the Due Process Clause) found in the Fourteenth Amendment anyway.

2. Antonelli cites a plethora of statutes to support jurisdiction, but they are either nonjurisdictional or inappropriate to the facts alleged. Ironi-

cally Antonelli omits citation to 28 U.S.C. § 1343(3), the jurisdictional statute most apposite to his Section 1983 claims. Construing the complaint liberally as required under *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 598, 30 L.Ed.2d 652 (1972), the Court reads the correct jurisdictional basis into the Complaint.

3. This "factual" recital simply accepts the Complaint's allegations. It implies no findings.

would inform him when to appear in court. Once again the attorney erred, this time by forgetting about the October 4 court date. When Antonelli again failed to appear at the second hearing, the court issued a bond forfeiture warrant. Realizing his oversight, the attorney promptly filed a motion to quash the warrant and vacate the order of bond forfeiture. That motion was granted October 6.

Later the same month Judge Frank J. McGarr of this District Court sentenced Antonelli to a four-year term of imprisonment for bank fraud. Then on October 23 Judge McGarr granted the Government's motion to revoke Antonelli's appeal bond. Among the reasons Judge McGarr cited for that action was the record of the bond forfeiture warrant issued for Antonelli's failure to appear in court for the proceedings on the complaint for deceptive practices.

In October 1979 Antonelli petitioned the Circuit Court of Cook County for expunction of the bond forfeiture warrant and the record of his arrest. That court refused to expunge the records, apparently because of Antonelli's prior criminal record. *See* Ill. Rev.Stat. ch. 38, § 206–5 (1981). Antonelli appealed the decision through the Illinois courts and unsuccessfully petitioned the United States Supreme Court for certiorari. *Antonelli v. Illinois,* 454 U.S. 1056, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981). Antonelli then sought federal habeas corpus relief. Judge Hubert Will denied the petition for lack of custody. *Antonelli v. Lippman,* No. 81 C 6968 (N.D.Ill. Dec. 23, 1981), *cert. of probable cause denied,* No. 82–1474 (7th Cir. May 18, 1982), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982). Antonelli now seeks:

Declaratory and Injunctive relief and monetary damages from all the players in the band of persons who have caused a Bond Forfeiture Warrant to be on his record.

### Claims for Relief

At the outset this Court notes some difficulty in determining the precise grounds underlying Antonelli's claims for relief. Antonelli broadly alleges a conspiracy among numerous defendants and asserts five separate "counts." Those "counts" are for the most part little more than conclusionary statements of constitutional violations. As such they do little to assist this Court (or defendants) in understanding exactly what Antonelli is suing about. Nonetheless *Haines v. Kerner* requires this Court to overlook the technical deficiencies of the pro se Complaint.[4] Read with indulgence, the Complaint appears to raise two claims premised on an alleged conspiracy among defendants:

1. a conspiracy to place a bond forfeiture warrant on Antonelli's record and to refuse to expunge it; and

2. a conspiracy falsely to accuse and prosecute Antonelli on charges of deceptive practices.

### Bond Forfeiture Warrant

Antonelli's claim regarding the bond forfeiture warrant has two aspects. One concerns the circumstances surrounding the issuance of the warrant, while the other concerns the state's failure to expunge the bond forfeiture warrant and arrest from his record. They will be dealt with in turn.

---

**4.** This Court will indulge Antonelli with the special solicitude the law traditionally accords the pro se litigant. Yet there must come a point at which the solicitude owed the justice system must (like a supply-demand curve) rise to, intersect and surpass the obligation owed a persistent litigant such as Antonelli. According to Staff Attorney Dale Hayes, Esq. (for whose efforts on this case, as on so many in forma pauperis filings, this Court is most grateful) this

Complaint marks the ninety-fifth Antonelli has filed in this District on his own behalf. In *Antonelli v. Scruggs,* 82 C 7026 (N.D.Ill. filed Nov. 22, 1982), Antonelli refers to himself as a "sophisticated" litigant. Rec.Doc. 56. Given his volume of litigation and self-proclaimed legal expertise, it might well be questioned whether Antonelli is any longer entitled to the benefits of *Haines v. Kerner.*

As for the first, Antonelli alleges defendants[5] caused him to have a bond forfeiture warrant on his record so that his federal bond would be revoked. To recover damages under Section 1983 a plaintiff must prove not only (1) defendants deprived him of his constitutional rights while acting under color of state law but also (2) their actions proximately caused the constitutional violation. *Crowder v. Lash*, 687 F.2d 996, 1002 (7th Cir.1982). As alleged in the Complaint, the facts as to the bond forfeiture warrant evidence no violation of Antonelli's constitutional rights. Moreover, even assuming arguendo the issuance of the bond forfeiture warrant in some way deprived Antonelli of a constitutionally protected right, the Complaint's allegations fail to demonstrate the requisite causal connection between any conduct of defendants and the bond forfeiture warrant.

Nothing irregular occurred in the proceedings surrounding the bond forfeiture warrant. Antonelli was served with summons requiring him to appear in court to answer a criminal complaint. When he failed to appear, the court issued a warrant and set bond. Police arrested Antonelli pursuant to the warrant. Antonelli posted bond and was given a new court date. When he failed to appear for the second date, the court issued a bond forfeiture warrant. It quashed the warrant two days later when Antonelli appeared and explained the reasons for his failure to appear. Antonelli does not (and cannot) challenge the validity of the bond forfeiture warrant. Absent such a challenge, the facts alleged in the Complaint simply do not state a Section 1983 claim for relief.

*See Baker v. McCollan*, 443 U.S. 137, 143–146, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979); *Talley v. Garippo*, No. 81 C 1009 (N.D.Ill. Mar. 30, 1981), *motion for leave to appeal in forma pauperis denied*, No. 81–1617 (7th Cir. Aug. 21, 1981).

Antonelli's own allegations also belie his contention defendants "caused" him to have a warrant on his record. By Antonelli's admission his own inaction, his failure to appear, prompted the court to issue the bond forfeiture warrant. Antonelli directly attributed his failure to appear to the negligence of his own attorney in forgetting to inform him of the court date, not to any conduct of defendants. Defendants' only act even dimly related to the bond forfeiture proceedings is the alleged conspiracy to initiate a false complaint against Antonelli. But defendants cannot be held liable for every consequence that flows from swearing a complaint. *See Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980). Under familiar proximate cause principles, any link between the initiation of proceedings and Antonelli's independent failure to appear is too attenuated to hold defendants liable for issuance of the bond forfeiture warrant.[6]

■ As for the second aspect of Antonelli's claim *Herschel v. Dyra*, 365 F.2d 17 (7th Cir.), *cert. denied*, 385 U.S. 973, 87 S.Ct. 513, 17 L.Ed.2d 436 (1966) controls. *Herschel*, 365 F.2d at 20 held a state's retention of an arrest record following dismissal of the underlying charges does not violate an individual's constitutional right to privacy. More recently *Diamond v.*

---

**5.** This opinion will refer to "defendants" collectively whenever the Complaint's vagueness precludes relating specific defendants to the particular deprivation alleged.

**6.** Any claimed link between defendants and the revocation of Antonelli's federal appeal bond is even more farfetched. Moreover, a review of the transcript reveals two important facts that undercut Antonelli's claim as it relates to the revocation of his appeal bond. *Cf. Green v. Warden*, 699 F.2d 364, 369 (7th Cir.1983) (court may take judicial notice of its own records). First, the record shows Antonelli was in state

custody when Judge McGarr revoked his federal appeal bond. Antonelli thus suffered no loss of liberty from the bond revocation. Second, the bond forfeiture warrant was but a minor factor in Judge McGarr's decision to revoke Antonelli's federal appeal bond. Far more important was the lengthy list of outstanding criminal charges against Antonelli. Remarking on those charges, Judge McGarr stated that if even half were true Antonelli was "probably one of the most viciously antisocial people who has ever come before me." *United States v. Antonelli*, 78 CR 114–1, Tr. at 4 (N.D.Ill. Oct. 28, 1978).

*United States,* 649 F.2d 496 (7th Cir.1981), did recognize a limited right to expunction of *federal* arrest records. But *Diamond* carefully distinguished *Herschel,* stating (649 F.2d at 498) expunction of federal arrest records does not involve the constitutional issues and concerns of federalism implicit in *Herschel.* Like Herschel, Antonelli seeks expunction of state records. *Herschel* remains the law of this circuit with respect to such claims and bars Antonelli's Section 1983 claim for expunction of the record of his arrest and the bond forfeiture warrant.

### Malicious Prosecution

■ Complaint Counts III and IV in essence allege a conspiracy to accuse and prosecute Antonelli on false charges, akin to a claim for malicious prosecution. But malicious prosecution, standing alone, is insufficient to state a claim for relief under Section 1983. *Bretz v. Kelman,* 722 F.2d 503, 505 (9th Cir.1983); *Koch v. Schneider,* 550 F.Supp. 846, 852 (N.D.Ill.1982). For that purpose the malicious prosecution claim must implicate the deprivation of some constitutionally protected right. *See Hampton v. Hanrahan,* 600 F.2d 600, 630 (7th Cir.1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

■ As drafted the Complaint is insufficient to state a Section 1983 malicious prosecution claim. Antonelli maintains defendants falsely accused him of deceptive practices and "bond forfeiture" without due process of law. That conclusionary statement lacks legal significance, absent any showing as to how the allegedly false accusations infringed on a liberty or property interest. Antonelli merely asserts "damage resulted" without explanation or elaboration. It is not part of this Court's responsibility to this pro se litigant to intuit claims from loosely-knit narratives.

But precisely because of the current Complaint's vagueness, this Court cannot say with certainty Antonelli could not allege a colorable Section 1983 malicious prosecution claim. Accordingly he is free to reassert a complaint alleging with speci-ficity the constitutional injuries that resulted from the alleged false charges. *See Wilson v. Iowa,* 636 F.2d 1166, 1168 (8th Cir.1981). If Antonelli were thus to identify the constitutional interests at stake, this Court could determine if his claim has sufficient merit to require defendants to respond.

■ In any such reassertion Antonelli must also remedy another pleading deficiency. His malicious prosecution claim is assertedly based on a conspiracy theory. In this Circuit, a conspiracy claim must be supported by more than mere conclusionary allegations. As our Court of Appeals said in *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1208 (7th Cir.1980):

> [E]ven a pro se litigant is required to allege something in the way of facts before his allegations of conspiracy may be deemed to state a valid claim.

*See also Antonelli v. Illinois,* No. 79 C 3435 (N.D.Ill. Sept. 1, 1981), *aff'd,* 723 F.2d 66 (7th Cir.1983).

Although Antonelli attempts to sweep all nine named defendants into his net, the only ones even remotely involved in his prosecution were Burnham, Kelly, and Royhl. All he alleges against them is simply (1) they all had a conversation concerning Antonelli in 1978 and (2) Burnham and Kelly had Royhl sign a complaint against him. Such bare allegations fall short of the particularity required to suggest the existence of a valid conspiracy claim. If Antonelli tries again, he must expand his allegations to explain the factual basis for his claim that Burnham, Kelly and Royhl conspired to prosecute him without cause or legal justification.

### Conclusion

Because Antonelli's Complaint is legally frivolous in its present state, the Court denies his motion for leave to file in forma pauperis. *See Wartman v. Milwaukee County Court,* 510 F.2d 130, 134 (7th Cir. 1975). Such denial is without prejudice to Antonelli's filing of a complaint against Burnham, Kelly and Royhl setting forth the factual foundations and constitutional

grounds for his claim they conspired to prosecute him on false charges. *See Lucien v. Roegner,* 682 F.2d 625 (7th Cir. 1982).[7] Any such complaint shall be on the forms required by General Rule 47 of this District Court.

---

7. This decision intimates no view on the merits of Antonelli's claim. This Court of course reserves the right to determine if any new effort is sufficiently nonfrivolous to permit filing and service on defendants.